ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI-ESPECIAL

| | | |
|---|---|---|
| MARÍA DE LOS ÁNGELES VILLARRUBIA RUIZ<br><br>Peticionaria<br><br>v.<br><br>AGUADA EMERALD FIELDS CANNABIS WELLNESS CENTER, LLC., NATALIA ALBERTORIO RIVERA EN SU CARÁCTER PERSONAL, COMO SOCIO ADMINISTRADORA Y AGENTE RESIDENTE DE AGUADA EMERALD FIELDS CANNABIS WELLNESS CENTER, LLC., EMERALD HOLDINGS, LLC., WILFREDO ORTIZ, PERSONA NATURAL ABC, PERSONA JURÍDICA DEF<br><br>Recurridos | KLCE202300048 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Aguadilla<br><br><br>Caso Núm.: AU2020CV00418<br><br><br>Sobre: Ley General de Corporaciones de Puerto Rico, Incumplimiento de Contrato, Dolo, Daños y Perjuicios |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero.

Martínez Cordero, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de abril de 2024.

Comparece la señora María de los Ángeles Villarrubia Ruiz (en adelante, señora Villarrubia Ruiz o peticionaria), ante este Tribunal revisor, mediante un recurso de *Certiorari.* Nos solicita que revisemos la *Orden* emitida y notificada el 21 de diciembre de 2022, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (en adelante, TPI o foro primario). Mediante el aludido dictamen, el TPI determinó que Aguada Emerald Fields Cannabis Wellness Center, LLC (en adelante, Aguada Emerald o recurrida) cumplió con el descubrimiento de prueba cursado por la señora Villarrubia Ruiz.

Número Identificador

RES2024_____

Por los fundamentos que expondremos a continuación, se *deniega* la expedición del recurso de *Certiorari.*

I

El 13 de diciembre de 2020, la señora Villarrubia Ruiz presentó una *Demanda* sobre la Ley General de Corporaciones[1], incumplimiento de contrato, dolo y daños y perjuicios en contra de Aguada Emerald, la Sra. Natalia Albertorio Rivera (en adelante, señora Albertorio Rivera), en su carácter personal y como socia administradora de Aguada Emerald, el Sr. Wilfredo Ortiz Aponte (en adelante, señor Ortiz Aponte), quien era el esposo de la señora Albertorio Rivera, la sociedad legal de gananciales compuesta por ambos, Emerald Holdings LLC, Health Herb LLC y otros[2].

Así las cosas, el 28 de enero de 2021, la peticionaria presentó una *Demanda enmendada*[3]. Posteriormente, el 15 de marzo de 2022, la señora Villarrubia Ruiz presentó una segunda *Demanda enmendada* a los fines de incluir una acción derivativa en representación Aguada Emerald y reclamar la anulación de la transferencia de la licencia para la operación del dispensario de cannabis medicinal y reclamar todos los daños y perjuicios que dicha transferencia le ocasionó a Aguada Emerald.[4]

Por su parte, el señor Ortiz Aponte presentó su *Contestación a segunda demanda enmendada.*[5] De igual forma, Emerald Holdings, presentó su *Contestación a la segunda demanda enmendada*[6]. A su vez, Aguada Emerald, presentó su *Contestación a segunda demanda enmendada y Reconvención enmendada.*[7]

---

[1] Ley General de Corporaciones, Ley Núm. 164 de 16 de diciembre de 2009, según enmendada, 14 LPRA § 3501 et seq.
[2] Véase entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos (en adelante, SUMAC).
[3] Véase Entrada Núm. 12 del SUMAC.
[4] Véase Entrada Núm. 180 del SUMAC.
[5] Véase Entrada Núm. 201 del SUMAC
[6] Véase Entrada Núm. 207 del SUMAC.
[7] Véase Entrada Núm. 208 del SUMAC.

Luego de varios incidentes procesales, los cuales no son necesarios pormenorizar, inició el descubrimiento de prueba. Según surge del expediente ante nuestra consideración, el 5 de diciembre de 2022, la señora Villarrubia Ruiz, presentó una *Solicitud de orden sobre producción de documentos* y una *Moción incluyendo anejos de solicitud de orden de producción de documentos*.[8] En esencia, solicitó a la señora Albertorio Rivera, administradora de Aguada Emerald, unos documentos que no había entregado.

En específico, solicitó los siguientes documentos: 1) certificados de membresía y evidencia de pago; 2) copia de los formularios 499R-3, W3PR y 480 emitidos durante los años 2018 a 2021; 3) copia de las planillas de contribución sobre ingresos para los años 2020 y 2021; 4) copia de las planillas de CRIM para los años 2018 a 2021; 5) copia del pago de patentes para los años 2018 a 2021; 6) copia de los informes del Departamento de Estado para los años 2018 a 2021; 7) reporte de las compras y ventas de los años 2018 a 2021 o documentos relacionados a compras y ventas de Aguada Emerald; 8) copia de los documentos donde se haya llevado cuenta del dinero que se mantuvo en bóveda durante los años 2018 a 2021; 9) estado financiero para el periodo que concluye el 31 de agosto de 2021; 10) mayor general detallado, para los periodos terminados el 31 de diciembre de 2018 a 2021 o récords de la contabilidad de Aguada Emerald; 11) contratos de empleados; 12) contratos con contratistas; 13) contratos con otras compañías; y 14) copia de documentos relativos a la venta del inventario de productos de cannabis de Aguada Emerald que se vendió a EFA, LLC, incluyendo cualquier documento que demostrase el precio pagado por Aguada Emerald al adquirir los productos.

---

[8] Apéndice del Recurso, a las págs. 3-6.

Con relación a dicha solicitud, el 7 de diciembre de 2022, el TPI emitió una *Orden*, que se notificó al día siguiente, en la cual dispuso lo siguiente:

> "Se ordena a la señora Natalie Albertorio como administradora de Aguada Emerald producir los documentos requeridos al inciso 6 en Moción de orden sobre producción de documentos presentada por la parte demandante.
>
> Si no puede producirlo exprésêlo y si puede y no lo hace, el Tribunal tomará determinaciones en la vista…"[9]

El 9 de diciembre de 2022, Aguada Emerald presentó una *Moción en cumplimiento de orden*. Arguyó que, el 21 de noviembre de 2022, la señora Albertorio Rivera contestó la producción de documentos que se le remitió el 5 de diciembre de 2022. Además, acompañó la Moción con un documento intitulado *Contestaciones a segunda producción de documentos*.[10] En el referido documento, Aguada Emerald objetó la mayoría de los requerimientos. En la misma fecha, el TPI emitió y notificó una *Orden* en la cual determinó que la señora Albertorio Rivera cumplió con la producción de documentos.[11]

Posteriormente, el 16 de diciembre de 2022, la señora Villarrubia Ortiz presentó una *Moción de reconsideración*[12]. Adujo que, Aguada Emerald indujo a error al TPI, toda vez que presentó una *Moción* en la cual esbozó que cumplió con el descubrimiento de prueba. No obstante, señaló que la señora Albertorio Rivera acompañó una contestación a requerimiento de documentos que se le había cursado previamente y, en la cual había objetado la solicitud de producción de documentos. Por tanto, razonó que tal incumplimiento ocurrió puesto a que los documentos requeridos, nunca fueron producidos. En virtud de lo anterior, solicitó se dejara sin efecto la *Orden* que se dictó el 9 de diciembre de 2022, se

---

[9] Apéndice del Recurso, a la pág. 7.
[10] *Id.*, a las págs. 8-13.
[11] *Id.*, a la pág. 14.
[12] *Id.*, a las págs. 15-19.

impusiera el pago de $3,000.00 en gastos y honorarios de abogado y se ordenase a producir los documentos solicitados.

Por su parte, el 19 de diciembre de 2022, Aguada Emerald, presentó su *Oposición a la moción de meconsideración.*[13] Sostuvo que la producción de documentos fue atendida conforme a derecho y al *Operating Agreement de Aguada Emerald Fields Cannabis Wellness Center LLC.* A su vez, enfatizó que el proceder de la señora Villarrubia Ruiz provocó el retraso de los procedimientos.[14]

Para la misma fecha, el TPI emitió una *Resolución,* notificada el 20 de diciembre de 2022, en la cual determinó lo siguiente:

> Aguada Esmerald y/o Natalia Albertorio cumpla con Orden de 7 de diciembre de 2022 so pena severas sanciones y concluir no producen documentos por serle adversa a su teoría de caso.[15]

No obstante, dos días después, el 21 de diciembre de 2022, el TPI emitió una segunda *Resolución,* que se notificó al día siguiente en la cual determinó lo siguiente:

> "A Moción de Reconsideraci[ó]n de parte demandante No ha lugar. Se le instruye observar los C[á]nones de [É]tica Profesional en especial los relativos a la relaci[ó]n entre abogados y la forma ha dirigirse al Tribunal.
>
> No se fijan san[c]iones económicas por ahora. Se le advierte a la parte demandante no regrese con el habitual escrito alegando el Tribunal no concedió 20 días para exponer conforme Regla 8.4 de Procedimiento Civil ya que estos discurren desde la radicaci[ó]n del escrito al notificarse.
>
> Los letrados se quejan sus escritos no son atendidos con prontitud, me siento satisfecho de ser la excepción[.] [E]sta moci[ó]n se radicó el 19 de diciembre de 2022 y es resuelta el 21 de diciembre de 2022.
>
> Recuerden tienen fecha de cierre de Descubrimiento Prueba y Vista de CAJ.."[16]

Inconforme con la determinación que emitió el foro primario, el 18 de enero de 2023, la peticionaria acudió ante este foro

---

[13] Apéndice del Recurso, a las págs. 20-32.
[14] Acompañó dicha Moción con el *Operating Agreement of Aguada Emerald Fields Cannabis Wellness Center, LLC Limited Liability Company Commonwealth of Puerto Rico.* Véase, además, entradas Núm. 305, 306,411,419 y 420 del SUMAC.
[15] Apéndice del Recurso, a la pág. 33.
[16] *Id.,* a las págs. 1-2.

intermedio mediante recurso de *Certiorari* donde alegó la comisión de un (1) error, a saber:

> **Erró el Honorable Tribunal de Primera Instancia e incurrió en prejuicio, parcialidad y craso abuso de su discreción al dictar la Resolución del 21 de diciembre de 2022. A pesar de que Aguada Emerald no ha producido los documentos solicitados; constituyendo este proceder una violación al debido proceso de ley de la parte recurrente.**

El 6 de febrero de 2023, Aguada Emerald compareció ante este Tribunal mediante una *Solicitud de desestimación.* En esencia, alegó que la señora Villarrubia Ruiz incumplió con las disposiciones del Reglamento del Tribunal de Apelaciones, específicamente, con la Regla 33(A) y (B)[17]. Además, arguyó que no procedía la expedición del auto de *Certiorari,* amparándose en la Regla 40, del referido Reglamento[18] y en la Regla 52.1 de las de Procedimiento Civil[19]. De otra parte, adujo que el descubrimiento de prueba ante el TPI no había culminado y, que estaba pautado para culminar el 15 de mayo de 2023. Por ello, razonó que, si la peticionaria estaba inconforme con las objeciones que se presentaron en la producción de documentos, debió cumplir con la Regla 34 de las de Procedimiento Civil,[20] y no radicar otra *Solicitud de producción de documentos,* en la cual requirió los mismos documentos.

Por su parte, el 13 de febrero de 2023, la parte peticionaria presentó su *Oposición a solicitud de desestimación.* Esbozó que, el 19 de enero de 2023, notificó por correo certificado con acuse de recibo copia de la portada sellada conforme lo exige la Regla 33 del Tribunal de Apelaciones. A su vez, señaló que esperar a que culminase el juicio ante el TPI, para luego presentar un recurso de apelación, representaba un fracaso irremediable a la justicia.

---

[17] 4 LPRA Ap. XXII-B, R. 33.
[18] 4 LPRA Ap. XXII-B, R.40.
[19] 32 LPRA Ap. V, R. 52.1.
[20] 32 LPRA Ap. V, R. 34.

El 13 de febrero de 2023, Aguada Emerald presentó su *Alegato en oposición.* De ahí, mediante *Resolución* emitida el 28 de febrero de 2023, esta Curia desestimó el recurso instado por falta de jurisdicción. Empero, dicho dictamen fue revocado por el Alto Foro mediante *Sentencia* el 16 de febrero de 2024. A tenor, y en cumplimiento con lo mandatado en la *Sentencia* emitida por la última instancia judicial, hemos evaluado los méritos del recurso instado, por lo que procederemos a exponer el derecho aplicable.

II

### A. Expedición del recurso de Certiorari

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de Procedimiento Civil.[21] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> [...]
> El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[22]
> [...]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

---

[21] 32 LPRA Ap. V, R. 52.1.
[22] *Id.*

[…]

(b) *Recurso de "certiorari"* […]

Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari.*[23]

[…]

El recurso de *Certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[24] Expedir el recurso "no procede cuando existe otro recurso legal que protege rápida y eficazmente los derechos de la parte peticionaria".[25] Conviene desatacar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[26] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[27] La Regla 40 del Reglamento del Tribunal de Apelaciones[28], esboza los criterios que el Tribunal deberá considerar para expedir un auto de *Certiorari,* como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

---

[23] 32 LPRA Ap. V, R. 52.2 (b).
[24] *800 Ponce de León, Corp. v. American International Insurance Company of Puerto Rico,* 205 DPR 163, 174 (2020).
[25] *Id.*
[26] *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).
[27] *Id.*
[28] 4 LPRA Ap. XXII-B, R.40.

    D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

    E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

    F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

    G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[29] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[30]

## B. El Descubrimiento de Prueba

El descubrimiento de prueba permite a las partes descubrir, obtener o perpetuar la prueba necesaria para sustentar sus alegaciones en el acto del juicio.[31] Además, está basado en el principio básico de que antes del juicio, las partes tienen derecho a descubrir toda información relacionada con su caso, independientemente quién la posea.[32] Así, las cosas, las normas que regulan el procedimiento de descubrimiento de prueba persiguen los siguientes propósitos: (i) precisar los asuntos en controversia; (ii) obtener evidencia para ser utilizada en el juicio, evitando una sorpresa en esta etapa de los procedimientos; (iii) facilitar la

---

[29] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).
[30] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[31] *Id.*, 151.
[32] *Id.*, 152.

búsqueda de la verdad; y, (iv) perpetuar evidencia.[33] A esos efectos, su finalidad es permitir que las partes puedan prepararse para el juicio, de forma tal que tengan la oportunidad de obtener la evidencia necesaria para evaluar y resolver las controversias del caso.[34]

Los Tribunales de Primera Instancia tienen amplia discreción para regular el ámbito del descubrimiento de prueba, ya que están obligados a garantizar una solución económica, justa y rápida del caso, sin ventaja para ninguna de las partes.[35] Al establecer el término para realizar el descubrimiento de prueba, deben hacer un balance entre dos (2) intereses de gran importancia, de una parte, garantizar la pronta solución de las controversias, y de otra, velar que las partes tengan la oportunidad de realizar un amplio descubrimiento, para que en la vista en su fondo no surjan sorpresas.[36] A raíz de ello, el fin del descubrimiento de prueba es que las partes obtengan la información necesaria para la preparación del juicio, con el objetivo de que puedan precisar los asuntos en controversia y descubrir la verdad de lo ocurrido.[37] A tales efectos, para dar cumplimiento a ese objetivo, los tribunales deben conceder un tiempo razonable para que ambas partes puedan completar su descubrimiento de prueba, evaluar la información obtenida, y así estar en mejor posición de presentar su caso.[38]

III

Habida cuenta de que el recurso ante nuestra consideración se trata de un *Certiorari*, este tribunal revisor debe determinar, como cuestión de umbral, si procede su expedición. En su único señalamiento de error, la peticionaria alega que el foro primario erró

---

[33] *Id.*
[34] *Id.*
[35] *Id.*, 153-154.
[36] *Id.*, 154-155
[37] *Id.*, 156.
[38] *Id.*

e incurrió en prejuicio, parcialidad y craso abuso de discreción al dictar la *Resolución* del 21 de diciembre de 2022. Ello, a pesar de que Aguada Emerald no produjo los documentos solicitados, lo que constituyó una violación al debido proceso de ley.

En específico, la peticionaria esboza que el foro primario dictó múltiples órdenes a los fines de que Aguada Emerald entregase los documentos solicitados. No obstante, plantea que, en varias ocasiones, el TPI dejó sin efecto dichas órdenes, por lo que la privó de su derecho a realizar su descubrimiento de prueba de manera adecuada. Además, sostiene que Aguada Emerald nunca cumplió con la entrega de los documentos solicitados.

Por su parte, Aguada Emerald argumenta que cumplió con el descubrimiento de prueba, dado que entregó copia de las facturas de costos de los productos, las planillas de contribución sobre ingresos, los estados financieros las facturas de ventas del inventario disponible. A su vez, señala que la señora Villarrubia Ruiz pretendía que se entregase información confidencial al amparo del Art. 19.20 de la Ley General de Corporaciones[39]. Por último, aduce que, de estar inconforme con los documentos, la peticionaria debió presentar una moción al amparo de la Regla 34 de las de Procedimiento Civil y, no una segunda producción de documentos.

Como es sabido, un tribunal apelativo no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que dicho tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[40] Puntualizamos, que el *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una

---

[39] 14 LPRA sec. 3970.
[40] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

decisión de un tribunal inferior.[41] A esos efectos, la naturaleza discrecional del recurso de *Certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Ahora bien, la expedición del recurso de *Certiorari* al amparo de la Regla 52.1 de Procedimiento Civil[42], no opera en el vacío; tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones.[43]

Tras evaluar minuciosamente el recurso presentado por la señora Villarrubia Ruiz, la totalidad del expediente ante nuestra consideración, así como los autos ante el TPI en el SUMAC, juzgamos que no procede nuestra intervención. Es nuestra apreciación que no se configuran ninguna de las instancias que justificaría la expedición del auto de *Certiorari* al amparo de la Regla 40 del Reglamento de este Tribunal, ni de la Regla 52.1 de las Reglas de Procedimiento Civil.[44] El señalamiento de error y los fundamentos aducidos en la petición presentada no lograron persuadirnos de activar nuestra función discrecional en el caso de autos. Razonamos que esta no es la etapa del procedimiento más propicia para nuestra intervención. Puntualizamos que tampoco estamos ante una determinación que configure abuso de discreción, prejuicio, parcialidad o error craso y manifiesto que amerite nuestra función revisora. El dictamen recurrido no es patentemente erróneo, y encuentra cómodo resguardo en la sana discreción de la primera instancia judicial. Además, razonamos que la peticionaria no nos ha persuadido de que, al aplicar la norma de abstención apelativa en este momento, conforme al asunto planteado constituirá un rotundo

---

[41] *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009).
[42] 32 LPRA Ap. V, R. 52.1.
[43] 4 LPRA Ap. XXII-B, R.40.
[44] *Id.* 32 LPRA Ap. V, R. 52.1.

fracaso de la justicia. Por todo lo antes mencionado, no atisbamos razón para intervenir con la determinación recurrida.

A su vez, resaltamos que el funcionamiento efectivo de nuestro sistema judicial y la pronta disposición de los asuntos litigiosos hacen necesario que los jueces de instancia ostenten gran flexibilidad y discreción para lidiar diariamente con el manejo y la tramitación de los asuntos judiciales.[45] Es nuestra apreciación que no existen elementos que justifiquen nuestra intervención con el manejo del caso según determinado por el foro primario. Ello, tomando en consideración que la determinación de manejo del caso responde al curso procesal adoptado por el TPI. De igual forma, resulta menester destacar que el TPI tiene discreción al ordenar el cumplimiento con el descubrimiento de prueba y cualquier otro asunto procesal. Así las cosas, debemos abstenernos de intervenir con la determinación del foro primario en esta etapa de los procedimientos.

Por último, advertimos que lo aquí resuelto, no tiene efecto de juzgar o considerar en los méritos ninguna de las controversias planteadas por las partes, de modo que estas podrían ser traídas nuevamente en una etapa posterior. Es decir, la denegatoria de esta Curia a expedir un recurso de *Certiorari* no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en los méritos.[46] Esto es así, ya que, como es sabido, una resolución de denegatoria de un auto de *Certiorari* no implica posición alguna de este Tribunal respecto a los méritos de la causa sobre la cual trata dicho recurso.[47] La resolución denegatoria simplemente es indicio de la facultad discrecional del tribunal revisor de negarse a revisar en determinado momento una decisión emitida por el TPI. [48]

---

[45] *Banco Popular de Puerto Rico v. Gómez Alayón y otros,* 2023 TSPR 145.
[46] *Cacho Pérez v. Hatton Gotay,* 195 DPR 1, 12 (2016).
[47] *SLG v. Pauneto Rivera,* 130 DPR 749, 755 (1992).
[48] *Id.,* 756.

IV

Por los fundamentos que anteceden, se *deniega* la expedición del recurso de *Certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones